UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILLIP G. YATES,

                              Petitioner,

        -vs-                                                    **REPORT and RECOMMENDATION**
                                                                **No. 09-CV-6303(CJS)(VEB)**

SUPERINTENDENT, MID-STATE C.F.,
WILLIAM H. HULIHAN,

                              Respondent.
_____

## I.    INTRODUCTION

        Philip G. Yates ("Yates" or "Petitioner") has filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his April 3, 2007

judgment of conviction following a guilty plea to two counts of Driving While Intoxicated, New

York Vehicle and Traffic Law ("V.T.L.") §§ 1192(3) and 1193(1)(c)(I) and one count of

Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree, V.T.L. § 511(3)(a), all

class E felonies. The two guilty pleas, which were entered in Yates County Court (Falvey, J.)[1],

combined two separate prosecutions; the first was for crimes committed on February 5, 2006

(Indictment # 06-48) and the second for crimes committed on March 9, 2007 (Superior Court

Information # 07-21) while Yates was released on bail. On each count, Petitioner was sentenced

to concurrent, indeterminate prison terms of one and one-third to four years. Yates concedes that

he waived his right to appeal as part of the guilty plea, and in fact, did not appeal his convictions.

        As grounds for habeas relief Yates asserts, as he did in support of his motion for *vacatur*

_____

[1]        By coincidence, Yates bears the name of the county in which he was convicted.

pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, that (1) his plea of guilty was improper due to the fact that he was suffering from a mental defect at the time he made the plea, making him incapable of understanding or participating in the proceedings; and (2) the conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel because his attorney should have raised the defense of mental disease or defect, and there was no tactical reason for his attorney to allow him to plead guilty to the two sets of independent charges. Yates asserts that because he refused to submit to a Breathalyzer test at both of the arrests, there was no proof of his intoxication. He argues that his alleged mental disease or defect made him appear to be intoxicated. According to Yates, trial counsel should have pursued the mental disease/defect defense instead of counseling him to plead guilty.

As the third ground for habeas relief, Yates argues that the County Court lacked subject matter jurisdiction and personal jurisdiction over his case because he was sentenced as a recidivist in the absence of a certificate of conviction proving his predicate felony conviction for driving while intoxicated in 2001.

On October 8, 2009, Respondent filed papers in opposition to Petitioner's petition. (Docket No. 8). Petitioner filed a reply to the respondent's opposition to the petition. (Docket No. 16). Respondent did not, nor could he without this Court's permission, respond to the reply. On July 13, 2010, Petitioner filed a sur-reply. (Docket No. 20). Respondent requested that the Court strike Petitioner's sur-reply, noting that sur-replies are not typically permitted in habeas practice, especially where the Court has not authorized any such pleading. (Docket No. 21). Yates also requested that counsel be appointed to assist him in connection with this proceeding and that this Court exercise "supplemental jurisdiction" over certain non-habeas claims.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(c)(1). I denied Yates's motion to appoint counsel, declined to exercise supplemental jurisdiction over Yates's non-habeas claims, and granted Respondent's motion to strike Yates's sur-reply. (Docket No. 24). Yates then filed a notice of interlocutory appeal as to this order. (Docket No. 25). The United States Court of Appeals for the Second Circuit issued a Mandate finding, *sua sponte*, that it lacked jurisdiction over the appeal because a final order had not yet been issued by the District Court. (Docket No. 26).

This matter is now fully briefed and is ready for decision. Following careful consideration of all of the pleadings submitted by Yates in support of his claims, and Respondent's arguments in opposition thereto, I recommend that Yates's request for a writ of habeas corpus be denied and that the petition be dismissed in its entirety .

## II.     FACTUAL BACKGROUND

### A.     The Pleas and Sentencing

On February 5, 2006, Yates was arrested for Driving While Intoxicated, a felony, as well as four traffic infractions and Harassment in the Second Degree. A Yates County grand jury returned Indictment No. 06-48 charging Yates with felony Driving While Intoxicated. While released on bail, Petitioner was arrested on March 9, 2007, for felony Driving While Intoxicated, and for Aggravated Unlicensed Operation of a Vehicle in the First Degree. He was charged with these crimes under Superior Court Information No. 07-21.

On March 13, 2007, Yates and his counsel appeared before Yates County Court Judge W. Patrick Falvey and pleaded guilty to the Driving While Intoxicated charge in the Yates County indictment**.** Respondent has not submitted a copy of the transcript of the March 13, 2007 plea

proceedings because the Yates County District Attorney was unable to locate a copy of it. Respondent's Memorandum of Law ("Resp't Mem.") at 2, n.1 (Docket No. 8).

On April 3, 2007, Yates appeared before Judge Falvey for sentencing with regard to the March 13th plea as well as to plead guilty to the crimes charged in the Superior Court Information arising from his March 9th arrest.[2]

Petitioner's counsel, Thomas Corletta, Esq., explained that Petitioner's March 13th plea had been made in exchange for an agreed-upon sentence one and one-third to four years. 4/3/07 Tr. at 2-3. He explained further that Petitioner had been arrested on March 9, 2007, for aggravated unlicensed operation of a vehicle and felony driving while intoxicated, and had been charged under SCI # 07-21. *Id.* at 3. Counsel explained that Petitioner was to be sentenced with regard to his March 13th guilty plea, and also was going to be permitted to plead guilty to the new charges in the SCI in exchange for his waiver of indictment and the imposition of a concurrent, one and one-third- to four-year sentence. *Id.* The prosecutor concurred with counsel's understanding the status of the proceedings and added that the new plea would include a waiver of the right to appeal, as had the prior plea agreement. *Id.* at 3-4.

Under oath, Petitioner stated that he was 47-years-old; had completed high school through twelfth grade; and could read, speak, and understand the English language. *See* Resp't Ex. A at 4. Petitioner stated that he was not suffering from any mental disease or defect that would affect his understanding of the proceedings. He further affirmed that none of his medications for diabetes, hypertension, or depression impaired his ability to comprehend the

---

[2]      A copy of the transcript from the April 3, 2007 proceeding (hereinafter, "4/3/07 Tr.") is attached as Exhibit A to Respondent's Answer and Memorandum of Law (Docket No. 8). The exhibits attached to Docket No. 8 are hereinafter referred to as "Resp't Ex.".

proceedings. *Id.* at 4-5. Petitioner then waived his right to prosecution by indictment and stated his willingness to plead guilty to the two new charges. *Id.* at 6. Petitioner acknowledged that he had discussed the terms of the plea agreement with his attorney, that he understood the substance of those discussions, and that he was satisfied with his attorney's advice and counsel. Resp't Ex. A at 8-9.

Yates then admitted that on March 9, 2007, in the Village of Penn Yan, at 10 or 11:00 a.m., he drove his Chevy Cavalier after having ingested beer at his home. *Id.* at 9-10. Petitioner admitted further that he refused to take a Breathalyzer test and that in 2001, he had been convicted of driving while intoxicated, a misdemeanor. *Id.* at 10-11. Petitioner next admitted that on March 9, 2007, his license had been suspended or revoked because of a driving while intoxicated charge. *Id.* at 11.

Yates confirmed his understanding that he could receive a sentence of up to four years in prison for each of the crimes to which he was pleading guilty. Resp't Ex. A at 12. Yates acknowledged that he understood, by pleading guilty, he was relinquishing his rights to have the prosecutor prove his guilt beyond a reasonable doubt, to have a jury of his peers unanimously find him guilty, to confront witnesses and present evidence in his defense, to remain silent, and to challenge the police conduct during his arrests. *Id.* Petitioner stated that he had received no other sentencing promise, and that the court had indicated that it would sentence petitioner to concurrent sentences of one and one-third to four years on each of the counts in the indictment and the superior court information, and a $2,000 fine, and that the court would suspend his driver's license. *Id.* at 13.

Yates waived further pre-sentence investigation, and acknowledged that his plea was

conditioned on his waiver of his right to appeal his conviction or the denial of any pre-trial rulings rendered in the case. Resp't Ex. A at 14. Trial counsel noted that Yates had signed a waiver of the right to appeal, and Yates acknowledged that he had discussed the terms of the waiver with his attorney. *Id.* at 14-16. Yates confirmed that he was voluntarily waiving his right to appeal. *Id.* at 16. Petitioner stated that his guilty plea had not been coerced and was not "in any way prompted by pressures brought to bear on [him] by [his] attorney."  He further confirmed that his guilty plea was not the result of any involuntary confession or statement, or any illegally-seized evidence. Indeed, trial counsel informed the court that there were no pending suppression motions. *Id.* at 16-17.

Petitioner stated that he had discussed any possible defenses with his attorney, and he understood that he was waiving those defenses by pleading guilty. *Id.* at 17. Trial counsel then explained he had "done quite a bit on Indictment 06-48, including getting quite extensively into [petitioner's] mental health treatment history and physical history . . . ." Trial counsel observed that Yates's second arrest had "brought about this plea," and commented, "[M]aybe I may have underestimated a little bit myself how much his alcohol problem controls him, and I would hope that [he] get[s] the available treatment" to overcome his problem. *Id.* at 20.

The trial court agreed with trial counsel's assessment as to the severity of Yates's alcohol dependency, noting that Yates needed "to get a control of the use of alcohol." Resp't Ex. A at 21. Yates declined to say anything in his behalf, and the trial court proceeded to impose sentence. With regard to the 2006 indictment, the trial court sentenced Yates to a prison term of from one and one-third to four years and a $1,500 fine, and revoked petitioner's driver's license. *Id.* at 22. With regard to the 2007 charges, the trial court sentenced Yates to two concurrent indeterminate

terms of one and one-third to four years; a $2,000 fine; and revocation of his driver's license. *Id.*
at 22-23. The trial court ordered that Yates should be allowed to participate in a substance
treatment program, if he was eligible to do so. *Id.* at 23.

### B.      Post-Conviction Proceedings

#### 1.      The Unperfected Direct Appeal

On April 13, 2007, Yates' trial counsel filed a notice of appeal, which is attached as
Exhibit B to Resp't Mem. (Docket No. 8). As noted above, however, Yates waived his appellate
rights as part of his plea agreement. In any event, the appeal has never been perfected.

#### 2.      The First Motion for *Vacatur*

About a year and a half after the notice of appeal was filed, Yates filed a *pro se* motion
for *vacatur* pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in the trial court
on or about November 17, 2008. Yates argued that he was "incapable of understanding or
participating" in the plea and sentencing proceedings because of a "mental disease or defect," and
that he was deprived of the effective assistance of trial counsel. *See* Petitioner's C.P.L. § 440.10
Affidavit, ¶ 1 (Resp't Ex. C). According to Yates, he was not in his "right mind" when he
pleaded guilty because he was taking a combination of medicines for his "physical ailment[s]" as
well as allegedly "psychotropic" medications. Id., ¶ 3 (Resp't Ex. C). Yates contended that trial
counsel to challenge the charge of driving while intoxicated and failed to assert as a defense that
Yates suffered from a mental disease or defect. *Id*., ¶¶ 6, 8-9 (Resp't Ex. C). The People opposed
the motion on the ground that the claims were procedurally barred pursuant to C.P.L. §
440.10(2)(c)  because the claims were record-based and could have been, but unjustifiably were
not, raised on direct appeal. *See* People's Opposition Affidavit, ¶ 4 (Resp't Ex. D) (citing N.Y.

CRIM. PROC. LAW §440.10(2)(c)). The prosecution argued further that the plea minutes reflected that Yates clearly understood the plea proceedings and had pleaded guilty voluntarily. *Id.*, ¶ 5 (Resp't Ex. D). Petitioner filed a reply to which he attached medical reports and correspondence which, he alleged, supported his claim that his mental state was detrimentally affected by a "mental disease or defect" at the time of the plea. Petitioner's Reply (Resp't Ex. E).

The trial court denied on the merits Yates' claim that he lacked the ability to understand and consent to the guilty pleas due to a mental disability at the time of his guilty pleas. Judge Falvey observed that although a Notice of Appeal had been filed, the People had not provided any proof that such an appeal was perfected and Yates asserted that he did not know a notice of appeal had been filed by his attorney. Judge Falvey declined to deny the motion pursuant to C.P.L. § 440.10(2)(c) or (b) because the matters asserted by Yates were "not entirely contained in the record. . . . ." *People v. Yates*, 2009 WL 2000089, at *2  (N.Y. Co. Ct. (Yates County) Jan. 28, 2009).

Judge Falvey denied Yates' request for a hearing on the issue of his alleged mental illness at the time he pled guilty because (1) he failed to establish that there was a triable issue of fact and thus failed to overcome the presumption of the validity of the judgment under attack. *People v. Yates*, 2009 WL 200089, at *2 (citing *People v. Session*, 34 N.Y.2d 254, 256 (N.Y. 1974)); and (2) failed to establish that the non-record facts sought to be established at an evidentiary hearing were material and would entitle him to relief[,]" *id.* (citing *People v. Satterfield*, 66 N.Y.2d 796,799 (N.Y. 1985)). After examining Yates' non-record proof offered in support of the C.P.L. § 440.10 motion–namely, Yates' affidavit; a copy of prescription logs; an unsigned report allegedly made by one "Johnnie Walker, MA, ABD [sic]" on May 12, 2006; and a September 8,

2006 statement signed by Leibing Tang, MD–Judge Falvey found that these items were "insufficient to raise a triable issue of fact to overcome the presumption of the validity of the subject judgment." *Yates*, 2009 WL 200089, at *2 (citing N.Y. CRIM. PROC. LAW § 440.30). In particular, Judge Falvey determined, Yates had "not provided any medical records showing a mental illness that would cause him to not understand the proceedings in March and April of 2007, when he entered his pleas and/or was sentenced on the two accusatory instruments." *Id.* Furthermore, Judge Falvey conducted an "extensive colloquy at the time of these proceedings, occurring on two separate dates a month apart, during which the defendant testified that he took medication for depression, among other things, but that such medication, and such depression, did not cause him to be unable to understand the proceedings." *Id.* Finally, Judge Falvey stated, Yates' non-record proof did not establish that Yates "failed to receive adequate legal representation." *Id.*

Petitioner sought leave to appeal the denial of his C.P.L. § 440.10 motion to the Appellate Division; the People opposed the application; and Petitioner filed a reply to the People's opposition. *See* Resp't Exs. G, H & I. The Appellate Division denied Petitioner's application on April 15, 2009. *See* Resp't Ex. J. On July 9, 2009, the Appellate Division also denied Petitioner's motion seeking reconsideration of the denial of leave to appeal. *See* Resp't Exs. K, L, M & N.

### 3.    The Second Motion for *Vacatur*

Yates filed a second C.P.L. § 440.10 motion (Resp't Ex. O) on May 4, 2009, arguing that the trial court did not have jurisdiction to hear his case because New York criminal statutes lack "an Enacting clause or a [sic] effect clause," rendering them invalid. In response to this specious argument, the prosecution explained that the Count Court did have jurisdiction because Yates

had committed his crimes in Yates County, the County Court had the jurisdiction to hear felony crimes occurring within Yates County, and it had personal jurisdiction over individuals who commit crimes within Yates County. Furthermore, Petitioner subjected himself to the court's jurisdiction by appearing in court. *See* Resp't Ex. P. Yates replied that the County Court illegally sentenced him to a recidivist sentence without a certificate of conviction of his prior conviction. *See* Resp't Ex. Q.

On June 8, 2009, Judge Falvey denied the motion (Resp't Ex. R), finding that it had subject matter jurisdiction to hear the case, and personal jurisdiction over Petitioner.  The trial court also held that Petitioner's admission, during both plea proceedings, to having been convicted in 2001 of driving while intoxicated, adequately proved the prior 2001 conviction. Petitioner sought leave to appeal to the Appellate Division; the prosecution opposed the application, Petitioner replied to the prosecution's opposition; and the prosecution filed a supplemental affirmation in opposition to the motion. *See* Resp't Exs. S, T, U & V. On September 25, 2009, the Appellate Division denied Petitioner's leave application. *See* Declaration of Lisa Fleischmann, Esq., ¶ 4.

## III.   GENERAL LEGAL PRINCIPLES APPLICABLE TO HABEAS PETITIONS

### A.   Title 28, Sections 2254(a) and 2254(d)

Habeas relief is only available to redress errors in a state court criminal proceeding that are of a federal constitutional magnitude. *See* 28 U.S.C. § 2254(a). The Anti-terrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2254(d) to provide that

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

**B.      Exhaustion**

In general, a habeas petitioner must have exhausted state-court remedies with regard to his federal constitutional claims before seeking relief in federal court. *See* 28 U.S.C. § 2254(b)(1); *Daye v. Attorney Gen'l of N.Y.*, 696 F.2d 186, 190 (2d Cir.1982) (*en banc*), *cert. denied*, 464 U.S. 1048 (1984). In order for a claim to be considered exhausted, it must have been presented fully and fairly in federal constitutional terms to the State courts. *See*, *e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). To fairly present a federal constitutional claim, the petitioner must have set forth for the state court all the essential factual allegations and legal premises now being asserted in federal court. *Id.* The exhaustion doctrine requires the petitioner to press his claim during one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

**IV.    DISCUSSION**

**A.      Ground One: Ineffective Assistance of Trial Counsel**

Petitioner argues, as he did in his first C.P.L. § 440.10 motion, that trial counsel was ineffective because counsel did not properly investigate the case. Specifically, Yates faults trial

counsel for failing to adequate explore (1) the viability of a defense that the prosecution could

not prove their case at trial in the absence of Breathalyzer results to prove Petitioner's

intoxication, and (2) that Yates was suffering from a mental disease or defect. The C.P.L. § 440

court found that Petitioner's non-record proof submitted in support of the motion for *vacatur*

failed to establish that trial counsel was ineffective, and thereby adjudicated the claim on the

merits.

Yates also contends, for the first time in his habeas petition, that his attorney wrongly

advised him that his sentences would run concurrently. Petition, Attachment, ¶ 8 (Docket No.

1). This third contention is factually baseless and frivolous since Petitioner's sentences were

ordered to run concurrently. Therefore, it should be summarily dismissed.

With regard to Yates's other two contentions regarding trial counsel's performance, I

recommend finding that the trial court's adjudication on the merits of the ineffectiveness claim

was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

### 1.    Overview of the *Strickland* Standard

In order to prevail on a Sixth Amendment ineffectiveness claim, a defendant must prove

(1) that trial counsel's representation "fell below an objective standard of reasonableness"

measured under "prevailing professional norms," *Strickland*, 466 U.S. at 688, and (2) that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different," *id.* at 694. In *Strickland*, the Supreme Court said that

"[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort

[must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time." 466 U.S. at 689. Thus, a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *accord, e.g., Bell v. Cone*, 535 U.S. 685, 698 (2002).  The Supreme Court has noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

The Supreme Court explained in *Strickland* that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." 466 U.S. at 693 (internal citation omitted). Rather, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of assessing counsel's performance with regard to a defendant's decision to plead or not plead guilty, the Supreme Court explained in *Hill v. Lockhart*, 474 U.S. 52 (1985), that the *Strickland* "prejudice" often "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." 474 at 59. Thus, where trial counsel's alleged error involves a failure to advise the defendant of a potential defense to the crime charged, a finding of "prejudice" requires asking whether there is a "reasonable probability" that the defendant would have elected to proceed to trial, *id.*; *see also, e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000). This in turn requires assessing the

likelihood that the potential defense would have succeeded at trial.  *See, e.g.*,  *Mitchell v. Scully*, 746 F.2d 951, 954-55 (2d Cir.1984) (rejecting ineffective assistance of counsel claim where attorney failed to inform petitioner of available defense; defense had "exceedingly little likelihood" of success and would have had greater chance of exposing petitioner to more severe punishment than just pleading guilty).

Yates, as a habeas petitioner filing under the amended habeas statute, must clear an additional hurdle by showing that the New York state court's adjudication of the merits of his claim did not amount to an unreasonable application of *Strickland*. *See Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir. 2010) ("We emphasize again that the New York state standard for ineffective assistance of counsel is not contrary to *Strickland*.") (citing *Eze v. Senkowski*, 321 F.3d 110, 123-24 (2d Cir. 2003); *contrasting with Henry v. Poole*, 409 F.3d 48, 70 (2d Cir. 2005) (recognizing that "in the absence of a contrary decision by this Court *en banc*, or an intervening Supreme Court decision, we are bound to follow the precedents . . . that the N[ew]Y[ork] Court of Appeals standard is not 'contrary to' *Strickland*")).

The Second Circuit has stated that the level of "unreasonableness" that must be shown under 28 U.S.C. § 2254(d)(1) "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) (quoting *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002)). As the Circuit further explained in *Eze v. Senkowski*, 321 F.3d at 121, an unreasonable application of Supreme Court precedent means more than that the state court incorrectly applied the precedent; it had to apply the facts in an "objectively unreasonable manner." *Id.* There must be "some increment beyond error is required," although it "need not be great; otherwise habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence." *Id.* (internal citations omitted).

### 2.    Analysis of Trial Counsel's Alleged Errors

As noted above, Yates assigns error to trial counsel for failing to adequate explore (1) the viability of a defense that the prosecution could not prove their case at trial in the absence of Breathalyzer results to prove his level of intoxication, and (2) that Yates was suffering from a "mental disease or defect."

### a.    Failure to Investigate a Defense Based Upon the Lack of Breathalyzer Results

Yates contends that he had a valid defense because the prosecution did not have evidence of his blood-alcohol content to use in its case-in-chief. When he was pulled over by the police, Yates refused to submit to a Breathalyzer test. Accordingly, he was charged with V.T.L. § 1192(3), the "common law" version of the crime of driving while intoxicated. V.T.L. § 1192(3) "is based upon the manner a defendant operated his vehicle and his condition."  Section 1192(3) of the V.T.L. is not based on the defendant's blood-alcohol content.[3]  In proving this charge, the prosecutor would only have to present eyewitness testimony regarding Petitioner's level of intoxication. *E.g.*, *People v. Miller*, 199 A.D.2d at 695. Because Yates was charged with violating Vehicle and Traffic Law § 1192(3), the lack of Breathalyzer results would not have been fatal to the prosecution's case. The alleged lapse in proof did not give rise to a colorable defense having a reasonable likelihood of success at trial. Thus, Yates has failed to demonstrate

---

[3]        "Vehicle and Traffic Law § 1192 (2) and § 1192 (3) are separate crimes having distinct elements, namely, section 1192 (2) is based upon a defendant's blood alcohol content while section 1192 (3) is based upon the manner a defendant operated his vehicle and his condition." *People v. Miller*, 199 A.D.2d 692, 695 (App. Div. 3d Dept. 1993).

how he was prejudiced by trial counsel's alleged failure to investigate this defense.

### 2.    Failure to Investigate Defense of "Mental Disease or Defect"

As an initial matter, I note that the record belies Petitioner's claim that counsel failed to investigate his mental health condition and treatment history: At the April 3, 2007 plea proceedings, trial counsel explained that he had looked extensively into his client's "mental health treatment history and physical history" and concluded that Yates had a significant, ongoing problem with alcohol abuse and dependency. *See* Resp't Ex. A at 20 (Docket No. 8).

Furthermore, as the Court has discussed *infra* in this Report and Recommendation in Section IV.B.2, the C.P.L. § 440.10 court correctly found that Petitioner's documentation did not demonstrate that Petitioner suffered from a mental illness which prevented him from understanding the nature of his actions which led to his arrest or from comprehending what was at stake when he pleaded guilty and was sentenced. Nor did Petitioner establish that the medications for his depression and mood disorders impair his cognition so as to render him incapable of participating in his defense. Trial counsel thus did not unreasonably conclude that Petitioner did not have a viable defense based on his alleged mental incompetency.

### 3.    Cumulative Effect of Trial Counsel's Alleged Errors

Taken singly or together, trial counsel's alleged derelictions do not constitute professionally unreasonable choices regarding Yates's representation. Nor did they result in prejudice to Yates as there is no reasonable probability that, but for trial counsel's alleged failures to press certain defenses, Yates would have proceeded to trial. As discussed above, neither of the purported defenses (lack of evidence and mental incompetency) were meritorious. Although Yates disagrees, trial counsel negotiated a favorable plea agreement despite the fact

that Yates committed the second offense of driving while intoxicated second while he was out

on bail for another such charge and despite Yates' lengthy history of drunk driving. Notably, the

trial court agreed to impose concurrent sentences for both sets of charges although it legally

could have ordered the sentences to run consecutively to each other.  "[T]he relatively favorable

disposition of the criminal charges pending against [petitioner . . . ] buttresses the determination

of the state court[ ] that the conduct of [petitioner's] attorney was not objectively

unreasonable." *Ferrer v. Superintendent*, 628 F. Supp.2d 294, 311 (N.D.N.Y. 2008) (Mordue,

J.) (quoting *Dunn v. Senkowski*, No. 03-CV-0364, 2007 WL 2287879, at *10 (N.D.N.Y. Aug. 7,

2007) (McCurn, S.J.) (citing *Seifert v. Keane*, 74 F. Supp.2d 199, 206 (E.D.N.Y. 1999)

("Pursuant to the plea negotiated by his counsel, petitioner was convicted of a Class D felony

and received a sentence of two and one-half (2 ½) to five (5) years, to run concurrently with his

Queens County sentence. Given the favorable nature of petitioner's plea, the court cannot say

that counsel's performance was deficient, even if part of the bargain was to forego his

substantial– though not conclusive–argument that his prior 1978 conviction was not a predicate

violent felony") (footnote omitted; citing, *inter alia*, *People v. Crippa*, 245 A.D.2d 811, 812,

666 N.Y.S.2d 781 (App. Div. 3d Dept.1997) (no ineffective assistance despite failure to

challenge predicate felony statement where counsel negotiated "favorable" plea reducing

defendant's prison exposure), *aff'd*, 205 F.3d 1324 (2d Cir. 2000)). Accordingly, I recommend

that Yates' claim of ineffective assistance of trial counsel be dismissed as without merit.

### B.     Ground Two:  Involuntariness of Guilty Plea

#### 1.     Exhaustion

Respondent has raised the defense of failure to exhaust state remedies with regard to

Petitioner's claim that his guilty plea was involuntary. Respondent notes that a claim that a plea was involuntary can be raised on appeal, even if the defendant has waived his right to appeal. *See*, *e.g., People v. Seaberg*, 74 N.Y.2d 1, 10 (N.Y. 1989). According to Respondent, Yates could still perfect an appeal to the Appellate Division although Respondent does not cite any authority for Yates being able to do so. Respondent claims that "[b]ecause Petitioner has not raised this claim in state court in the highest court available to him, the claim is unexhausted." Resp't Mem. at 10-11 (Docket No. 8-3).

This Court disagrees. Respondent's argument ignores that the fact that Yates raised the involuntariness claim in constitutional terms in support of his first C.P.L. § 440.10 motion, and the trial court denied it on the merits. Yates then sought leave to appeal the denial of the C.P.L. § 440.10 motion to the Appellate Division. There is no appeal possible to the New York Court of Appeals from the Appellate Division's denial of leave to appeal denial of C.P.L. § 440.10 relief. With regard to a C.P.L. § 440.10 motion, then, one complete round of appellate review means presentment of claims to the trial court followed by an application for leave to appeal to the Appellate Division, assuming the trial court denies *vacatur*. Yates thus complied with the requirements of the exhaustion doctrine by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. There is no requirement that a habeas petition complete more than one round of appellate review with regard to a claim, so that even if Yates could belatedly prosecute a direct appeal and raise the involuntariness claim, he need not do so for the claim has already been fully exhausted.

The Court proceeds to consider whether Judge Falvey's adjudication on the merits of the

claim amounted to an unreasonable application of the Supreme Court's clearly established precedent on the due process requirements in connection with guilty pleas.

### 2.    Merits Analysis

"Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (quoting *Brady v. United States*, 397 U.S. 742, 752 (1970)). "Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation" by pleading guilty. *Id.* (citing *Brady*, 397 U.S. at 758). To accept the "basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process[,]" *id.* Simply that a plea "may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial" does not make it improper. *Id.*

"When a guilty plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination." *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Thus, a guilty plea is valid only if the record demonstrates that it is voluntary and intelligent. *Boykin*, 395 U.S. at 242-43.  While the "'governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness

accorded state court factual findings.'" *Parke v.  Raley*, 506 U.S. 20, 35 (1992) (quoting

*Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) (internal citation omitted)).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant.'" *Hill v. Lockhart*, 574 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31

(1970)). The Second Circuit has summarized the relevant factors as follows:

> [A] plea is deemed "intelligent" if the accused had the advice of counsel and
> understood the consequences of his plea, even if only in a fairly rudimentary
> way; it is deemed "voluntary" if it is not the product of actual or threatened
> physical harm, mental coercion overbearing the defendant's will, or the
> defendant's sheer inability to weigh his options rationally.

*Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir.1988). A reviewing court will uphold a guilty

plea entered by a defendant "'fully aware of the direct consequences . . . unless induced by

threats . . . misrepresentation . . . , or perhaps by promises that are by their nature improper.'"

*Brady v. United States*, 397 U.S. at 755 (quotation omitted). Since a defendant who pleads

guilty waives several fundamental constitutional rights, in order for the waiver to be valid under

the due process clause, it must be "'an intentional relinquishment or abandonment of a known

right or privilege.'" *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (quoting *Johnson v.

Zerbst*, 304 U.S. 458, 464 (1938)). "Not only must the plea of guilty be voluntary, it must also

be a knowing and intelligent act done with 'sufficient awareness of the relevant circumstances

and likely consequences.'" *United States v. Rossillo*, 853 F.2d 1062, 1064 (2d Cir. 1988)

(quoting *Brady,* 397 U.S. at 748).

"Personally questioning the defendant not only aids the court in determining the

voluntariness of the guilty plea, it also serves to aid that determination in any post-conviction

proceeding based on a claim that the plea was not voluntary." *Rossillo*, 853 F.2d at 1065 (citing *McCarthy*, 394 U.S. at 467). Statements made by a defendant at a plea hearing constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Here, Judge Falvey made every effort to "expose[ ] the defendant's state of mind on the record through personal interrogation," *McCarthy*, 394 U.S. at 467.  In response to Judge Falvey's questioning, Yates stated that "he understood what was happening and that he was not suffering from any mental disease or defect that would prevent him from understanding what was happening." *People v. Yates*,  2009 WL 200089, at *1. Judge Falvey conducted an "extensive colloquy" at both proceedings which occurred on two separate dates a month apart. Judge Falvey noted that the time Yates pled guilty to Indictment # 06-28 on March 13, 2007, "he stated that he had not taken any drugs, narcotics or alcohol within the past 24 hours." *Id.*  On April 3, 2007, when he pled to SCI # 07-21, Yates "also stated that he was on medication for diabetes, high blood pressure, cholesterol and depression, but that it did not affect his ability to understand what was happening." Furthermore, as Judge Falvey noted, "the [plea] minutes show[ed] that he was not delusional or unable to comprehend the nature of his actions." *Id.* Yates stated under oath, in open court, that although he was on medication for depression, among other things, the medication he was taking and his depressive disorder "did not cause him to be unable to understand the proceedings." *Id.*

Yates essentially appears to be arguing that he was not competent to voluntarily plead guilty because he suffered from a "mental disease or defect." It is well-settled that the "criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453 (1992). This "prohibition is fundamental to an adversary system of justice." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). "A criminal defendant may not be tried unless he is competent and he may not . . . plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993). "For the plea to be voluntary, '[i]t is axiomatic' that the defendant must at least be competent to proceed." *Oyague v. Artuz*, 393 F.3d at 106 (quoting *United States v. Masthers*, 539 F.2d 721, 725 (D.C. Cir.1976)). The federal standard for determining competency to stand trial is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)).

This Court agrees with Respondent that Yates' in-court, under-oath statements completely undermine his contention that he suffered from a "mental disease or defect" and therefore lacked sufficient awareness of the relevant circumstances surrounding the guilty plea and the likely consequences of his actions.

The Court has carefully reviewed the additional documentation submitted in support of Yates' C.P.L. § 440.10 motion and agrees with the trial court that it did not raise a triable issue as to Yates's mental state so as to warrant an evidentiary hearing on Yates' competency. First, as the trial court noted, the report submitted by "Johnnie Walker, MA, ABD [sic]" on Yates' "psychological and legal status" is unsigned. *See* Docket No. 8-2. Mr. Walker states that he is a

"Social Worker, Entitlement/Mental Health Specialist and Court Advocate" who began working with Yates in October 2004 in connection with his application for Social Security Disability Insurance Benefits. *See id.* This is not said to impugn Mr. Walker's qualifications, but it does not appear that he is a licensed medical or psychiatric practitioner qualified to render a diagnosis as to Yates' mental competency.  Indeed, in his recommendations, Mr. Walker states that Yates "needs to secure a psychiatric or psychosocial examination to determine his exact medical and psychiatric diagnosis, and his subsequent medical and psychotropic medication regimen." *See* Docket No. 8-2. Mr. Walker comments that Yates has experienced significant depression over a number of years. However, he states, Yates' psychiatric complaints and difficulties have been "inflated by over-endorsement" over the years and, in essence, Yates is "'fixated' on the fact that he is experiencing psychiatric pain and needs relief." *See* Docket No. 8-2. Significantly, Mr. Walker did not attest that Yates suffered an impairment of his ability to understand the nature of the charges against him with regard to his arrests for driving while intoxicated. Furthermore, Mr. Walker's examination of Yates was completed a year before Yates's guilty plea and does not represent a contemporaneous assessment of his mental condition at the relevant time. Even taking at face value everything in Mr. Walker's report, the Court notes that it does not conclude that Yates was incompetent.

Although Mr. Walker alluded to Yates' psychiatric problems as being incapacitating, it is interesting that Mr. Walker nevertheless rhetorically asked why, given his psychiatric problems, is Yates "more of a law abiding citizen than not[,]" Docket No. 8-2.  The Court finds that significant; Mr. Walker essentially concluded that notwithstanding his medications, chemical dependency, and mental health issues, Yates was able to function fairly well in society.

Certainly Mr. Walker's report does not support the conclusion that Yates did not possess the ability to rationally and factually understand the consequences of what he was doing by pleading guilty.

Petitioner also submitted a one-page report titled Kelly Behavioral Health Periodic Review for the period July 2006 to December 2006. *See* Docket No. 8-2. This report is signed by several individuals–a therapist, a nurse practitioner, and a psychiatrist–who each apparently evaluated Yates. The report indicates several diagnoses–an unspecified mood disorder, an adjustment disorder with anxiety, and an unspecified personality disorder with antisocial traits. The report indicates that Petitioner required follow-up care to monitor his medications and provide counseling for issues not otherwise addressed by his medication. However, nothing in the report suggests that these mental health issues prevented Yates from consulting with his lawyer with a reasonable degree of rational understanding or from possessing a rational as well as factual understanding of the criminal proceedings against him.

Finally, the statement from Dr. Leibing Tang (Docket No. 8-2) does not support Yates's claim of an incapacitating "mental disease or defect". Dr. Tang simply lists the medications Yates was taking as of September 2006. There is no suggestion anywhere that the medications for Yates' insulin-dependent diabetes, gastroesophageal reflux disease ("GERD"), chronic obstructive pulmonary disorder ("COPD"), or hypercholstrolemia had any effect on his mental state. The only pertinent part of Dr. Tang's statement is the treatment for Yates' "[d]epression, psychiatric disorder," about which Dr. Tang does not elaborate: Dr. Tang indicates that Yates was on 200 mg of Zoloft (sertraline) and an unspecified dosage of Trazodone at bedtime. Yates has not provided any substantiation for his assertions that the Zoloft or Trazodone could have

caused or did cause side-effects which would have impaired his cognitive functioning.

In sum, the record viewed in its entirety does not lend support to Yates' assertions that his plea was not voluntary, knowing, and intelligent because he was mentally incapable of comprehending the plea proceeding. The evidence proffered Yates is insufficient to show that he was suffering from a "mental disease or defect" that rendered him incompetent at the time of the plea.  On the contrary, the record amply supports a conclusion that Yates, at the time he entered his guilty plea, had "a rational as well as factual understanding of the proceedings against him," *Godinez v. Moran*, 509 U.S. at 396. For the foregoing reasons, this Court cannot find that Yates' due process rights were violated in any way during his plea proceeding. Accordingly, the Court recommends denying habeas relief on Yates' claim that his guilty plea was involuntary due to his alleged mental incompetency.

### C.    Ground Three: Lack of Subject Matter and Personal Jurisdiction

Petitioner claims that the County Court lacked subject matter and personal jurisdiction to sentence him because the People did not produce a certificate of conviction to prove Petitioner's prior conviction on a charge of driving while intoxicated. As Respondent explains, Petitioner's 2007 conviction of felony driving while intoxicated was premised on his 2001 conviction for that crime; pursuant to statute, a second conviction for driving while intoxicated renders the crime a felony. *See* VEHICLE & TRAFFIC LAW § 1193(1)(c)(I); N.Y. CRIM. PROC. LAW § 200.60.

It is well settled that when a defendant pleads guilty, he waives all non-jurisdictional defects. *People v. Taylor*, 65 N.Y.2d 1, 6-7 (1985) ("A guilty plea not only constitutes an actual waiver of certain rights associated with a trial, but also effects a forfeiture of the right to renew many arguments made before the plea. Examples include an alleged unconstitutional

presumption in a statute; a claimed deficiency in a jurisdictionally sufficient accusatory instrument; and an allegation of selective or vindictive prosecution or preindictment prosecutorial misconduct.") (internal citations omitted). The Supreme Court explained in *Tollett v. Henderson*, 441 U.S. 258 (1973), that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to a deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 263.

Yates attempts to bring this claim outside of the *Tollett* doctrine by asserting that the defect affected the trial court's "jurisdiction". However, New York courts have specifically held that where a prosecutor fails to file a special information pursuant to C.P.L. § 200.60 setting forth the conviction that forms the basis of the enhanced driving while intoxicated sentence, that failure amounts to nothing more than a "procedural defect" in the proceedings, and the claim is waived by the defendant's guilty plea. *People v. Gill*, 109 A.D.2d 419, 420 (App. Div. 3d Dept.1985) ("[D]efendant claims that the failure of the prosecution to file the special information prior to his plea resulted in his conviction of a misdemeanor only. As did County Court, we also consider this failure merely a procedural defect or irregularity which was waived by defendant's voluntary plea (*People v. Giuliano*, 52 AD2d 240 [, 243-44 (App. Div. 1ˢᵗ Dept. 1976)]). The designation of the charge of criminal possession in the indictment as a felony fully informed defendant of the grade of crime to which he was pleading (*People v. Giuliano*, *supra*.). Accordingly, defendant's attack on his conviction of criminal possession of a weapon in the third degree as a felony is meritless.").

Furthermore, the C.P.L. § 440 court correctly held that Petitioner's admissions during both plea proceedings to his 2001 conviction for driving while intoxicated rendered the proof adequate to support sentencing Petitioner as a felon. When a defendant admits to the prior conviction, the prosecution is relieved of the burden of proving the prior conviction. *People v. Hudson*, 300 A.D.2d 508, 508-09 (App. Div. 2d Dept. 2002); *see also People v. Gibson*, 21 A.D.3d 577, 578 (App. Div. 3d Dept. 2005) (holding that where defendant waived right to appeal, waiver precluded challenge to special information; when defendant pled guilty to the charges in the indictment, he specifically admitted to two convictions dated the same days as those listed in the special information). Yates admitted his prior conviction during both plea proceedings. *See* Resp't Ex. R at 2. Accordingly, Petitioner's claim that the sentencing proceeding was improper and that as a result, the sentencing court lacked jurisdiction, is not only barred by *Tollett*, it is wholly without merit.

## V.     CONCLUSION

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by Phillip G. Yates be dismissed. Furthermore, the Court finds that Yates has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue with respect to any of Yates's claims.

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: April 20, 2011
         Rochester, New York.

-27-

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: April 20, 2011
       Rochester, New York